## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| **DAVID STAUTIHAR,** individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>*v.*<br><br>**ADVISE INSURANCE AGENCY LLC**, an Indiana limited liability company, and **BLOOM INSURANCE AGENCY LLC**, an Indiana limited liability company,<br><br>*Defendants.* | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff David Stautihar ("Plaintiff" or "Stautihar") brings this Class Action Complaint and Demand for Jury Trial against Defendant Advise Insurance Agency LLC, ("Advise") and Defendant Bloom Insurance Agency LLC, ("Bloom") to stop the Defendants from violating the Telephone Consumer Protection Act by making telemarketing calls without consent to consumers who registered their phone numbers on the National Do Not Call Registry ("DNC"). Plaintiff also seeks injunctive and monetary relief for all persons injured by Defendants' conduct. Plaintiff, for this Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

### PARTIES

1.      Plaintiff David Stautihar is a resident of Muncie, Indiana.

2.      Defendant Advise is an Indiana limited liability company headquartered at 1331 S Curry Pike, Bloomington, Indiana 47403. Defendant Advise conducts business throughout this District, Indiana, and the U.S.

3.      Defendant Bloom is an Indiana limited liability company headquartered at 1331 S Curry Pike, Bloomington, Indiana 47403. Defendant Bloom conducts business throughout this District, Indiana, and the U.S.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

5.      This Court has personal jurisdiction over Defendants because Defendants conduct business in this District and because wrongful conduct giving rise to this case was directed from and into this District.

6.      Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendants conduct significant amounts of business transactions within this District and because the wrongful conduct giving rise to this case was directed from and into this District.  In addition, venue is proper in this District because both Defendants reside in this District.

## INTRODUCTION

7.      As the Supreme Court recently explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

8.      The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

2

9.      A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

10.     When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

11.     By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

12.     The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

13.     Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

14.     According to online robocall tracking service "YouMail," 3.9 billion robocalls were placed in January 2022 alone, at a rate of 126.3 million calls per day. www.robocallindex.com (last visited February 22, 2022).

15.     The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

16.     "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

17.     "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules*

---
[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls

*and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

## COMMON ALLEGATIONS

18.     Defendant Advise provides sales and marketing services to insurance companies. They sell health insurance and Medicare plans on behalf of other companies to consumers throughout the U.S. Defendant Advise operates call centers to solicit Medicare plans. [3]

19.     Defendant Bloom provides specialized technology and call center services to other insurance companies and consumers throughout the U.S. [4]

20.     Advise is a division of Bloom and is owned and operated by Bloom:



### SHERMAN
### ROGERS
Chief Executive Officer

Following an extensive career in healthcare marketing, including more than a decade as CEO of Finelight Marketing Services, Sherman Rogers founded Bloom in 2007 to address the need for highly specialized sales and sales automation software in the Medicare marketplace. Sherman later founded Advise in 2017 as a Medicare concierge service for Medicare Advantage beneficiaries. Together, Bloom and Advise provide sales and technology services for hundreds of thousands of beneficiaries in 48 states. Sherman resides in Bloomington, IN with his wife Meredith, and they have three grown children.
[5]

21.     Advise is a division of Bloom focused on selling Medicare plans to seniors.

Advise is a Medicare focused insurance agency that serves as a trusted advisor to seniors seeking to understand their Medicare insurance options and enroll in the best health plan for their needs. Advise simplifies the Medicare insurance experience for both patients and physicians and empowers seniors to make confident decisions regarding their Medicare insurance.

With the partnership of our parent company, Bloom Insurance, we are growing, and we are transforming the healthcare industry through our sales automation technology and education, ensuring doctors are free to deliver the care seniors deserve.
[6]

---

[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commissions-rules-regulations/160616robocallscomment.pdf
[3] https://www.linkedin.com/company/advise-insurance/about/
[4] https://www.bloominsuranceagency.com/call-center-services/
[5] https://www.bloominsuranceagency.com/leadership/
[6] https://lensa.com/advise-call-center-advisor-jobs/mesa/jd/def742b414b87df4fb1ec8c1c4d650d0

22.     Defendant Bloom places outbound telemarketing calls to consumers nationwide to generate consumer leads for various insurance companies, but it transfers leads for Medicare plans to its own division, Advise. Defendant Bloom qualifies the consumers and transfers the calls of consumers qualified for Medicare to Defendant Advise. Defendant Advise receives the calls of the qualified leads from Defendant Bloom and solicits Medicare options to them.



**TELEPHONE SALES & ENROLLMENT**

With high quality comes high productivity. Our experienced team members receive continuous training and use the most innovative technology to ensure more prospects become members.

[7]

**LEAD GENERATION & DISTRIBUTION**

We generate and deliver warm leads in real time, set home visits, and take seminar RSVPs for field teams. Our agents are experts at vetting, prepping and introducing prospects so field agents can close the deal.

[8]

23.     Defendant Advise hires Defendant Bloom's call centers to place outbound calls to consumers and transfer the qualified Medicare prospects to Advise as inbound calls. Multiple consumers have posted complaints of receiving calls from third party caller centers, including foreign telemarketers, regarding Medicare which were transferred to Defendant Advise, just like Plaintiff Stautihar's experience:

---

[7] https://www.bloominsuranceagency.com/call-center-services/
[8] *Id.*

★☆☆☆☆  2 months ago

**Critical:** Professionalism, Value

I receive 5 calls a day about this insurance from overseas. They proceed to transfer me to this insurance agency

9

★☆☆☆☆  3 months ago

**Critical:** Professionalism, Quality, Responsiveness, Value

This place utilizes a foreign call center for live transfers, definitely somewhere in India, the reps are verbally abusive, they NEVER take you off the list, as sonn as you ask any probing questions or give any objections they hang up on then proceed to call you back to back, I've literally have lost count how many times this call center has called me, stay away from this company completely, they are a disgrace to the insurance biz which is already tainted, the means of getting business is simply pathetic, the person who made the decision to hire that call center to reach potential prospects should be fired.

10

24.    Defendant Bloom places outbound calls to generate leads for multiple Healthcare companies, including but not limited to Defendant Advise. Multiple consumers have posted complaints about receiving calls from Defendant Bloom on behalf of other health care companies, for instance:

> Second time. First was request for my husband. This time requested me. NOT a direct employee of HFHS. Claims to represent them. Caller ID: "Bloom Insurance". We are seniors tied in with HFHS. Fortunately We're not very gullible. This infuriates me and is wrong on many levels!!!!
>
> *Caller: Claiming to be Henry Ford Health Systems*
> *Call type: Telemarketer*

11

25.    Defendants hire employees to place outbound telemarketing calls, and to answer the inbound qualified calls to sell Medicare plans to them. Defendants have posted multiple such job posts for various roles together, for instance:

- A post for the role of Medical Insurance Agent by Defendant Advise[12]:

---

[9] https://www.google.com/search?q=%22Advise+Insurance%22
[10] https://www.google.com/search?q=%22Advise+Insurance%22
[11] https://800notes.com/Phone.aspx/1-248-205-2581
[12] https://jobsearcher.com/j/medicare-insurance-sales-agent-paid-training-remote-at-advise-insurance-in-silver-spring-md-dOl1lWg

6

- Advise is a Medicare focused insurance agency that serves as a trusted advisor to seniors seeking to understand their Medicare insurance options and enroll in the best health plan for their needs.
- Advise is a division of Bloom Insurance, a national insurance services company licensed in 48 contiguous U.S. states.
- With the partnership of our parent company, Bloom Insurance, we are growing, and we are transforming the healthcare insurance industry.
- What You Will Be Doing Our remote call center services feature highly specialized, experienced and dedicated telephone insurance sales agents.
- The Licensed Medicare Insurance Sales Agent assists callers quickly and professionally by receiving inbound calls to sell health insurance plans with Advise's sales techniques.

- With the partnership of our parent company, Bloom Insurance, we are growing, and we are transforming the healthcare insurance industry.
- What You Will Be Doing Our remote call center services feature highly specialized, experienced and dedicated telephone insurance sales agents.
- The Licensed Medicare Insurance Sales Agent assists callers quickly and professionally by receiving inbound calls to sell health insurance plans with Advise's sales techniques.
- Responsibilities: · Must meet all requirements to obtain and maintain a state licensed advisor status.
- · Proficiently work with Windows and comfortably navigating between websites to assist callers requesting information · Work on a computer 8 or more hours per day · Must have excellent attendance habits Education/Skills: Advise has trained hundreds of Licensed Medicare Insurance Sales Agents to provide professional sales and customer service over the phone.

- A job post by Defendant Advise for the role for Senior Sales Coach[13]:

## Senior Sales Coach at Advise Insurance

Advise Insurance   Bloomington, IN

- Advise / Bloom, the insurance industry's trusted growth partner, is looking for an experienced and dedicated individual to be responsible for creating and driving a sales focused culture for all Advise sales associates.
- This individual will assist in the creation of sales campaigns as well as sales training materials and agent onboarding (both field and telephonic).
- Additionally, this individual will shadow sales agents and audit sales calls to provide constructive feedback to improve selling effectiveness.
- 150K *Minimum QualificationSales



→ 150k    → telephonic    → shadow    → sales training    → onboarding

- A job post for the role of remote Medical Sales Representative by Defendant Advise[14]:

---

[13] https://jobsearcher.com/j/senior-sales-coach-at-advise-insurance-at-advise-insurance-in-bloomington-in-4oOjbGd
[14] https://jobsearcher.com/j/medicare-sales-representative-remote-at-advise-insurance-in-bloomington-in-Wej26Mp

# Medicare Sales Representative (Remote)

Advise Insurance   Bloomington, IN

$ $50,000 - $100,000 a year    Remote

---

- Medicare Sales Representative (Remote)
- Grow your career and be part of building a better healthcare experience.
- Are you passionate about the Medicare population and searching for an opportunity to help match beneficiaries with health plans and guide them through the enrollment process?
- If this sounds like you, we want you to join our team!
- We are looking for highly motivated and energetic Medicare Sales Representatives to join the Advise Insurance national sales team.
- As a Medicare Sales Representative, you will work with prospects to educate, qualify, and enroll them into health plans using Advise's quality and compliance guidelines.
- How Advise Helps You Reach Your Goals
- A comprehensive health benefits package
- Paid training to provide you with the knowledge and tools you need to deliver professional customer service over the phone


- Your Role at Advise
- Assist callers quickly and professionally by fielding inbound calls to sell health insurance plans using Advise's sales techniques
- Place outbound calls for member outreach
- Provide accurate information to prospects using Advise's quality and compliance standards
- Build relationships through superior customer service and satisfaction
- Work within established performance metrics
- Our Ideal Candidate
- Must have active, resident Health insurance license in good standing
- Must be at least 18 years of age
- High school diploma or equivalent
- Must not have failed America's Health Insurance Plans (AHIP) certification within the past 12 months
- Must be released or able to obtain release from current upline for Medicare carriers and employer
- Ability to absorb, retain, and explain a working knowledge of product plans and general Medicare information
- Communicate effectively with prospects and plan members over the phone and in-person with co-workers and management personnel
- Prior customer service experience
- Experience working in a call center environment

- A job post for the role of remote Call center Advisor by Defendant Advise[15]:

- Advise is a division of Bloom Insurance, a national insurance services company licensed in 48 contiguous U.S. states.
- With the partnership of our parent company, Bloom Insurance, we are growing, and we are transforming the healthcare insurance industry.
- What You Will Be Doing
- Our remote call center services feature highly specialized, experienced and dedicated telephone insurance sales agents.
- The Licensed Medicare Insurance Sales Agent assists callers quickly and professionally by receiving inbound calls to sell health insurance plans with Advise's sales techniques.

- Assist callers quickly and professionally by fielding inbound calls to sell health insurance plans with Advise's sales techniques
- Place outbound calls for member outreach and welcome calls to new members
- Provide accurate information to prospects using Advise's quality and compliance standards
- Communicate effectively with prospects and plan members over the phone and with co-workers and management personnel.
- Proficiently work with Windows and comfortably navigating between websites to assist callers requesting information
- Work on a computer 8 or more hours per day
- Must have excellent attendance habits
- Advise has trained hundreds of Licensed Medicare Insurance Sales Agents to provide professional sales and customer service over the phone.

26.    Many employees of the Defendants have posted reviews online regarding the

Defendants' telemarketing and cold calling practices, for instance:

> Health Plan Advisor (Former Employee) - Bloomington, IN - May 21, 2021
>
> Mismanaged company with decent pay. The job is boring and during AEP you normally are on the phones all day with no breaks. Calls come one after another with no pauses between calls. There were times I didn't get a lunch because it was busy. The equipment they give you sucks and the headset makes it impossible to hear the customer. I never knew who my manager was working there and everything is so mismanaged and stuff gets kicked around a lot to many people before the problem is solved. Way better jobs out there with similar or better pay that isn't a terrible work environment and where you don't wake up, hop on the computer at 8 or 9 AM, and take calls with no breaks or pauses until 5:30 pm, sometimes up to 7 or 8. You can go later if you want.

- [16]

---

[15] https://jobsearcher.com/j/advise-call-center-advisor-at-advise-insurance-in-bloomington-in-g8g1qnE
[16] https://www.indeed.com/cmp/Bloom-Insurance-Agency/reviews?start=60&sort=rating_asc

Health Plan Advisor (Former Employee) - Remote - February 2, 2022

It has your typical too good to be true feel. Job became quickly unorganized with
management. Even when i was recommended to become a bilingual agent, they
seemed to have preference over who they chose, even when i put a few requests they
got ignored. They gass you up for a month or two then start treating you different.
Also their motto is "do no harm" but youre essentially a robocaller. A lot of customers
seem more upset by this service than enjoy it. I couldn't work for a company i felt did
more harm than good. If you have a heart, you shouldnt work here. It was like signing
up for ASPCA and ending up in a slaughterhouse.                                    17

  Kaitlin Krage 💬 doesn't recommend **Bloom Insurance Agency**.
  11 January · 🌐

I was hired through an agency. The entire training process was rushed because it was in the
middle of AEP, half of training was waiting for credentials to fully function. Got thrown into
phone calls with no support or any materials. On the second day, I had such a severe panic
attack from the first day experience that I went to the ER for it.

All the other contracted employees and I worked tirelessly through the phone calls, collecting
as much applications as possible because of the incentives. No breaks no lunch, once AEP
was over they gave all of our temp agency an unexpected termination of ALL contracted
agencies (about 250-300 employees) with a less than 12 hour notice. I wasn't notified until a
week AFTER the termination.

Bloom terminated all of us and then hid behind the temp agencies like cowards while our
agencies were handling all the anger and scrambling to find jobs for us on a VERY short notice.

And on top of that never paid us our commissions so not only exphardworking. With the long
hours and no breaks just to burn through phone e calls, but also stole our wages that was
contracted and rightfully deserve for our hardwork.                                18

27.     Defendant Advise is aware of, consented to, and/or acquiesced in Defendant

Bloom's making the telemarketing phone calls to consumers described above.  Indeed, Advise is

aware of and received leads generated as inbound calls from the telemarketing phone calls from

Bloom.

28.     Based on the foregoing, Defendant Bloom was authorized by Defendant Advise to

act on Advise's behalf with respect to the telemarketing phone calls to consumers described above.

In addition and/or in the alternative, Bloom had apparent authority to act on Advise's behalf with

respect to the telemarketing phone calls to consumers described above.  In addition and/or in the

---

[17] https://www.indeed.com/cmp/Bloom-Insurance-Agency/reviews?start=60&sort=rating_asc
[18] https://www.facebook.com/bloominsuranceagency/reviews/?referrer=services_landing_page

alternative, Advise ratified Bloom's making of the telemarketing calls described above.  Indeed, Advise knew that Bloom places outbound telemarketing calls to consumers nationwide on behalf of Advise, to generate qualified Medicare consumer leads, without prior express written consent, or otherwise had knowledge of facts that would have led a reasonable person to investigate further, and yet Advise ratified Bloom's conduct without further investigation.  In addition and/or in the alternative, Advise was negligent in supervising Bloom's making of the telemarketing calls described above.  Accordingly, Defendant Advise is jointly responsible for Defendant Bloom's making of the telemarketing calls described above.

29.     The Federal Communication Commission has instructed that corporations such as Defendant Advise may not avoid liability by having their telemarketing outsourced:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as if often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC notes, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd. 6574, at ¶ 37 (201) ("FCC 2013 Ruling") (citations omitted).

30.     Neither Plaintiff nor the members of the proposed Class ever provided Defendants and/or their agents with prior express written consent to receive the telephone calls at issue. Defendants do not have any record of express written consent to place telemarketing calls to Plaintiff or to members of the proposed Class.

31.     Defendant Bloom willfully violated the TCPA.  Defendant Bloom was aware that it was making calls that violated each element of the TCPA, as alleged above. In the alternative, Bloom was reckless or willfully blind to the fact that it was making calls that violated the TCPA.

32.     Defendant Advise is liable for the willful TCPA violations of its agent, Bloom, committed within the scope of Bloom's authority.

33.     In addition or in the alternative, Defendant Advise was willful based on its own knowledge.  Advise was aware that Bloom was making the above-described, violative calls on its behalf.  In the alternative, Advise was recklessly indifferent or willfully blind to the fact that Bloom was making calls that violated each element of the TCPA (as alleged above).

## PLAINTIFF STAUTIHAR'S ALLEGATIONS

34.     Plaintiff Stautihar registered his phone number on the DNC on October 13, 2021.

35.     Plaintiff's phone number is not associated with a business and is used for personal use only.

36.     In October of 2021, the Plaintiff started receiving unsolicited phone calls soliciting Medicare options to him.

37.     Plaintiff answered multiple such calls and spoke to agents seeking information regarding Medicare: whether the client is on Medicare A or B, his date of birth, and his card number for Medicare.

38.     Plaintiff is not qualified for Medicare and told the agents to stop calling him. The agents were often rude in response to Plaintiff's stop requests.

39.     On December 1, 2021, at 10:11 am Plaintiff Stautihar received a call from the phone number 267-871-8489. Plaintiff answered the call, and an agent asked the same qualifying questions as before regarding Medicare. Plaintiff answered the questions and was transferred to an

employee of Defendant Advise. Plaintiff told Defendant Advise's employee to add his phone number to their do not call list.

40.    On December 1, 2021, at 11:28 am, Plaintiff Stautihar received another call to his cell phone from the phone number 941-999-6191. Plaintiff answered the call, and an agent asked the same qualifying questions as before regarding Medicare. Plaintiff answered the questions and was transferred to an employee of Defendant Advise. Plaintiff told Defendant Advise's employee to add his phone number to their do not call list. In response, Defendant's employee rudely hung up the phone.

41.    Despite making multiple stop requests to the Defendants' employees, Plaintiff continues to receive multiple calls to his cell phone each day from the Defendants using different spoofed phone numbers.

42.    Plaintiff is not qualified for Medicare and was not seeking information on Medicare. Plaintiff never gave his express written consent to the Defendants or their agents to receive telemarketing calls from them or on their behalf and does not have an established business relationship with Defendants or their agents.

43.    Defendant Bloom was and is aware that the above-described telephone calls were being made either by it directly, or made on its behalf, and that the telephone calls were being made to consumers who had not provided prior express written consent to receive them.

44.    Defendant Advise was and is aware that the above-described telephone calls were being made on its behalf, and that the telephone calls were being made to consumers who had not provided prior express written consent to receive them.

45.    The unauthorized telephone calls that Plaintiff received from Bloom on behalf of Advise, as alleged herein, have harmed Plaintiff in the form of annoyance, nuisance, and invasion

of privacy, and disturbed the use and enjoyment of his phone, in addition to the wear and tear on the phone's hardware (including the phone's battery) and the consumption of memory on the phone.

46.      Seeking redress for these injuries, Plaintiff Stautihar, on behalf of himself and a Class of similarly situated individuals, bring suit under the TCPA.

## CLASS ALLEGATIONS

47.      Plaintiff Stautihar brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seek certification of the following Class:

> **<u>Do Not Call Registry Class:</u>** All persons in the United States who from four years prior to the filing of this action through trial (1) either of the Defendants, or an agent on behalf of Defendants, called more than one time, (2) within any 12-month period, (3) where the person's residential telephone number had been listed on the National Do Not Call Registry for at least thirty days, (4) for substantially the same reason the Defendants called Plaintiff.

48.      The following individuals are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendants, their subsidiaries, parents, successors, predecessors, and any entity in which either Defendants or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against the Defendants has been fully and finally adjudicated and/or released. Plaintiff anticipates the need to amend the Class definitions following appropriate discovery.

49.      **Typicality and Numerosity**: Plaintiff is a member of the Class, and on information and belief, there are hundreds, if not thousands of members of the Class, all of which received calls from Defendants as part of a single telemarketing campaign, and joinder of all members is impracticable.

14

50.     **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

(a)     whether Defendants' conduct violated the TCPA;

(b)     whether members of the Class are entitled to treble damages based on the willfulness of Defendants' conduct.

(c)     whether Defendant Advise should be vicariously liable for the telemarketing calls made to the Plaintiff.

51.     **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in class actions. Plaintiff has no interests antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and have the financial resources to do so. Neither the Plaintiff nor his counsel have any interest adverse to the Class.

52.     **Appropriateness**: This class action is also appropriate for certification because the Defendants have acted or refused to act on grounds generally applicable to the Class as a whole, and thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and making final class-wide injunctive relief appropriate. Defendants' business practices apply to and affect the members of the Class uniformly, and Plaintiff's challenge of those practices hinges on Defendants' conduct with respect to the Class as a whole, not on facts or law applicable only to the Plaintiff. Additionally, the damages suffered by individual members of the Class will likely be small relative to the burden and expense of

individual prosecution of the complex litigation necessitated by Defendants' actions. Thus, it would be virtually impossible for the members of the Class to obtain effective relief from Defendants' misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

## FIRST CLAIM FOR RELIEF
### Telephone Consumer Protection Act
### (Violation of 47 U.S.C. § 227)
### (On Behalf of Plaintiff Stautihar and the Do Not Call Registry Class)

53.     Plaintiff repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

54.     The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

55.     Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.  47 U.S.C. § 227(c).

56.     Defendants violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff Stautihar and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

57.     Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff Stautihar and the Do

Not Call Registry Class received more than one telephone call in a 12-month period made by or on behalf of the Defendant in violation of 47 C.F.R. § 64.1200, as described above.

58.     As a result of Defendants' conduct as alleged herein, Plaintiff Stautihar and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, inter alia, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

59.     To the extent Defendants' misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Stautihar individually and on behalf of the Class, prays for the following relief:

a.  An Order certifying this case as a class action on behalf of the Class as defined above; appointing Plaintiff Stautihar as the representative of the Class; and appointing his attorneys as Class Counsel;

b.  An award of damages and costs;

c.  An Order declaring that Defendants' actions, as set out above, violate the TCPA;

d.  An injunction requiring the Defendants to cease all unsolicited calling activity, and to otherwise protect the interests of the Class; and

e.  Such further and other relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff Stautihar requests a jury trial.

DATED this 9th day of March, 2022.

**DAVID STAUTIHAR**, individually and on behalf of all others similarly situated,


By: /s/ Eric C. Bohnet
Eric C. Bohnet
Attorney at Law
6617 Southern Cross Dr.
Indianapolis, IN 46237
317-750-8503
ebohnet@gmail.com


Avi R. Kaufman
kaufman@kaufmanpa.com
Kaufman P.A.
237 South Dixie Highway, Floor 4
Coral Gables, FL 33133
Telephone: (305) 469-5881

*Attorneys for Plaintiff and the putative Class*